R. A. Romans, Appellee, v. D. C. Thew, Appellant.

**Brokerage contract:** INSTRUCTIONS. In an action to recover a broker's commission for procuring a purchaser for defendant's property, an instruction amounting to a peremptory finding of the original contract in favor of plaintiff and ignoring defendant's testimony on the subject was erroneous, although in other instructions the issue was submitted.

**Same.** Where defendant in a commission action contended that plaintiff, in a conversation subsequent to the original contract, had waived his right to the commission, the only burden imposed on defendant respecting the issue was to show that the conversation occurred, he was not required to show that plaintiff also understood he had waived his claim; and an instruction requiring the jury to so find was erroneous.

**Special interrogatories.** Special interrogatories to the jury which are so framed as to suggest the desired answer are objectionable; and while those relating to immaterial or undisputed facts are not necessarily prejudicial, yet when taken as a whole they clearly emphasize errors in the instructions, they will not be sustained.

*Appeal from Crawford District Court.*—Hon. Z. A. Church, Judge.

Wednesday, April 7, 1909.

THIS is an action brought by plaintiff to recover a broker's commission for procuring for defendant a customer for the purchase of a certain livery stock owned by the defendant. There was a verdict for the plaintiff. Defendant appeals.—*Reversed.*

*P. W. Harding,* for appellant.

*Conner & Lally,* for appellee.

EVANS, C. J.—The plaintiff alleges that in January, 1904, he was conducting a general brokerage or agency business for the sale of real estate and personal property, and for procuring purchasers for proposed vendors of property, and that the defendant was the owner of a certain livery stock then maintained and operated by him at Denison, Iowa, and that the defendant desired to sell such livery stock, that the defendant applied to the plaintiff to procure for him a purchaser for his livery stock, and that the plaintiff informed him that he thought one Savery, of Woodbine, would purchase or trade for the same, and that it was then and there agreed between plaintiff and defendant that, if Savery would purchase or trade for said stock, the defendant would pay the plaintiff $125 commission; that in pursuance thereof negotiations were had with Savery, and the defendant sold and traded to the said Savery the said livery stock. The plaintiff also alleges that his services were of the reasonable value of $125. To this petition the defendant answered with a general denial, and afterwards filed an amendment in two counts. In the first count he averred that he did enter into a contract with the plaintiff on or about the date named, but averred that such contract was as follows: The defendant was the owner of a livery stock and the owner also of a livery barn and the real estate upon which it was situated. . The plaintiff represented to defendant that Savery had a farm of one hundred

and seventy-two acres; that the plaintiff on his part agreed with the defendant to negotiate an exchange of defendant's property, consisting of the livery stock and real estate, at a price of $9,500, for the said one hundred and seventy-two acre farm of said Savery, at the price of $42.50 per acre, and for such proposed service on the part of the plaintiff the defendant agreed to pay him, as a full commission, $125; that it was further agreed that plaintiff was not given the exclusive right to sell the livery property, and that he would not be entitled to any commission only in case a sale was effected by him on the terms above stated; that the plaintiff wholly failed to effect an exchange upon such terms, or upon any terms satisfactory to the defendant. In count 2 of his answer the defendant alleges, in addition to the allegations set forth in count 1, that, after plaintiff undertook to negotiate said proposed exchange and failed, in February, 1904, he abandoned his efforts, and so notified the defendant, and that his agency was then and there terminated and revoked by consent of both parties; that thereafter one Adams, another real estate agent, negotiated for the defendant an exchange of said stock with the said Savery, and the defendant paid him a commission therefor.

Under the evidence it is undisputed that a contract existed between the parties which contemplated a commission of $125. It is also undisputed that the first negotiations with Savery were had through the agency of the plaintiff. It is practically undisputed that the first attempt at a trade between Savery and defendant failed, and that they came together a short time later, at which time they did reach an agreement which was consummated by an exchange of properties. There is a dispute in the evidence as to what were the terms of the original contract between the plaintiff and defendant. There is a sharp dispute also at one other point. After the first attempt at a trade had failed, the defendant claims that he had a

conversation with the plaintiff on the subject. He testified thereon as follows: "I telephoned Mr. Romans to know how he was getting along with the Savery deal, and he said it was off. He said there wasn't any trade in the man, and I says, 'Mr. Romans, I have got other agents and deals on hand, and if you can not make this deal, we better drop it,' and he says, 'All right; I can't do a thing with Savery.' And I says, 'if I dispose of this property myself, or through another agent, you don't expect a commission,' and he says, 'No.' Mr. Romans said that unless he closed the deal, he didn't expect a commission." These alleged statements were flatly denied by Romans. The principal dispute in the evidence is to be found at the two points noted. Generally speaking, it may be said that, if the plaintiff's version of the original contract may be accepted, he was clearly entitled to recover, unless the contract was modified in accordance with the alleged conversation testified to by the defendant; and, if the original contract was as testified to by the defendant, then the plaintiff was not entitled to recover, regardless of whether he had the later conversation or not. This statement of the issues and the evidence will be sufficient for the consideration of the certain alleged errors complained of by appellant, to which our attention will be confined.

I. It will be observed from the foregoing that the issues made by the pleadings were very simple, and the disputes of fact in the evidence were well defined, and few and decisive. In submitting the case the trial court gave thirty instructions to the jury, and submitted eight special interrogatories. These instructions show much labor, and evince an undoubted anxiety on the part of the trial court to do justice to the parties, and to instruct the jury on every phase of the legal subject involved. Upon a consideration, however, of the instructions and special interrogatories as a whole we feel constrained to say that the court lost sight

1. BROKERAGE CONTRACT: instructions.

of the simplicity of the issues, and involved them in considerable confusion. It goes without saying that it would be difficult to give so large a number of instructions on the simple issues of this case without much repetition. The defendant complains of such repetition herein, on the alleged ground that plaintiff got the benefit of it. We would be slow to find that mere repetition could be deemed prejudicial to the defendant. Unfortunately, however, the instructions as a whole are inconsistent, and not free from contradiction. Instruction No. 12 is as follows: "(12.) The evidence in the case tends to show, and it will be your duty to so find that Romans was employed by Thew to bring Mr. Thew and Mr. Savery together with a view of Thew's trading his livery barn and stock for Mr. Savery's farm, and that Mr. Thew was to pay a commission to said Romans of $125. It further appears that Thew and Savery, in pursuance of the arrangement thus made, were brought together to negotiate for a trade, and that subsequently a trade was made. Under these circumstances it will be your duty to find that Mr. Romans earned his commission, and will be entitled to your verdict for the same, with 6 per cent. interest from the date of the transaction, unless Mr. Thew has established by a preponderance of the evidence a waiver on the part of Mr. Romans of the claim for his commission." The effect of this instruction was a peremptory finding of facts in favor of the plaintiff, so far as the original contract was concerned. It wholly ignored the testimony of the defendant as to the terms of such contract. True, there were other instructions given that submitted such issue to the jury, but they availed little to the defendant in the presence of this instruction, the effect of which was to settle every issue in favor of the plaintiff, except the question of whether there was a subsequent conversation as testified to by the defendant and quoted above. The giving of this instruction was therefore clearly erroneous.

II. Instruction No. 8 was as follows: "If you find from the evidence that by reason of the agreement first had between Mr. Romans and Mr. Thew that Mr. Thew was to become liable to Mr. Romans for a commission of $125 in case a trade was made between Savery and himself, then, before Mr. Thew can escape liability to Mr. Romans, he must not only show that he understood that Mr. Romans had waived his claim to the commission, but that Mr. Romans also understood that he was to waive his claim to the commission." The only evidence in the record to which this instruction can be deemed applicable at all is the testimony of Thew above quoted as to the subsequent conversation between him and Romans, and the denial of such conversation by Romans. The only question which could properly be submitted to the jury with reference thereto was whether such conversation did or did not occur in substance. The only burden upon the defendant at this point was to show that the conversation occurred. If the conversation occurred, Romans would be presumed to have understood it, and no further burden remained upon the defendant to prove that he understood it.

*2. SAME.*

III. The court submitted to the jury 8 special interrogatories, to the first 7 of which the defendant objected. These, and the answers thereto, are as follows: "(1) Was it through Mr. Romans that Mr. Thew and Mr. Savery were first brought together to negotiate with each other for the exchange of Thew's livery stock for Savery's farm. A. Yes. (2) Did Mr. Romans, at any time before the deal between Mr. Thew and Mr. Savery was completed, know that Mr. Adams was trying to represent Mr. Thew in the transaction? A. No. (3) Did Mr. Romans consent to Mr. Adams representing Mr. Thew in the transaction? A. No. (4) Is it not a fact that the first that Mr. Romans knew that Mr. Adams was attempting to represent Mr.

*3. SPECIAL IN-TERROGATORIES.*

Thew was after the deal was completed? A. Yes. (5) Was not the deal finally made with the same Mr. Savery that Mr. Romans had mentioned to Mr. Thew at first? A. Yes. (6) Did Mr. Romans understand, at any time before the deal was completed, that he was to get no commission in case the deal was made with Mr. Savery? A. No. (7) Is it not a fact that Mr. Thew had made arrangements with Mr. Adams, and had agreed with him about the commission to be paid to Adams before he telephoned to Mr. Romans? A. Yes." The first and fifth interrogatories called for findings upon facts which were not in dispute. The second, third, fourth and seventh interrogatories called for a finding of facts which were of no controlling importance. The sixth interrogatory called for a finding of fact as to the understanding of Mr. Romans, and is subject to the same criticism as instruction No. 8. Interrogatories 4, 5 and 7 were objectionable in form in that they plainly indicated the answer desired. The word "not" should have been eliminated from each one of them. An interrogatory to a jury should not be introduced with the phrase, "Is it not a fact?" In so far as these interrogatories called for findings upon undisputed facts or upon immaterial facts, we would not hold that they were necessarily prejudicial. Taking them, however, as a whole, it is clear that they emphasized the errors which had already crept into the instructions, and they can not be sustained.

IV. Appellant has assigned, and separately argued, forty-two alleged errors. We can not discuss in this opinion all the alleged errors assigned. We have, however, given them all careful consideration. The larger number of them are clearly untenable. Those that are most doubtful in our minds are not such as are likely to arise upon a retrial, and we, therefore, pass them without discussion.

For the errors pointed out, the judgment below must be *reversed.*